Good morning, my name is Kathy Warnick, and I represent the people of the state of Illinois. Okay, 15 minutes per side. Keep your voices up. This is for recording that amplification. Okay. Good morning, Your Honors. May it please the Court. William Slater's trial attorney did not use controlling and favorable law to prevent the state from impeaching him in his trial with a prior burglar conviction. Had counsel made the correct argument, the Court would have excluded this 1998 conviction from his 2011 trial and would have known that a period of supervised release cannot bring a conviction within a 10-year time limit for this type of impeachment. Now, on appeal, the state hasn't argued that this was proper impeachment or that it was within the 10-year time limit. So the focus of this Court's inquiry should really be on whether Slater's trial counsel's error prejudiced him in this trial. Now, Slater presented an affirmative defense of self-defense, directly placing his credibility on the line. He testified that he was attacked by the complainant, Danny Daniel, from behind and responded in self-defense. Daniel, on the other hand, testified that Slater was the one who attacked out of the blue. So the jury's determination here really boiled down to this credibility contest between the two participants in the fight. No other witnesses saw it began. Is it a fair reading of the testimony at trial that at the time that he first wielded the hatchet and hit him about the head or neck that the defendant also had the chair leg in his hand? He said he had been hit in the back of the head with the chair leg once. I know. And then he caught the second one and took his hatchet and retaliated. So is it a fair reading, then, that at the time that he first wielded the hatchet and hit the victim in the head that he also had the other weapon, if you will, in his other hand? I think he had his hand on the weapon. I don't think the testimony says he had already disarmed Mr. Daniel. I think it was that he blocked the second blow and then responded with his hatchet. I don't think the picture is showing that the chair leg is on the ground at the scene. I don't think it was on the ground yet. I don't think the testimony that Daniel was completely disarmed. And it was an immediate response to this attack, getting hit once, turning and blocking the second blow and responding, which I think is a reasonable, if believed, that is a valid self-defense argument and valid testimony. Fair enough. If believed, yeah. If believed. And the problem with counsel's error here was that he damaged his own client's credibility by failing to preclude the use of this prior conviction to impeach him. What about the three convictions that the victim testified he had? The victim, one came in. I think the others were also too old and were precluded. One conviction for possession of a controlled substance with intent to deliver came in. You've got two guys on the street who are both engaged in illegal commerce, selling cigarettes on the corner, each of whom has a conviction. How is it that prejudicial? Well, the jury never should have heard that Slater had that conviction. Understood. Let's agree with you on that. Okay. Well, I think this is where the Supreme Court's decision in Naylor and this Court's own decision in People v. Sanchez are instructive. Both of those reversed based on the improper use of the prior conviction to impeach that was too old, both calling it a credibility contest. In Naylor, it was the testimony of two officers against the defendant. And in Sanchez, which was a nearly identical scenario here, counsel didn't move or object to the use of a prior conviction. The defendant had been released from confinement more than 10 years ago, but his MSR term would have brought it within the 10-year limit. This Court found that he was deficient for not objecting and called it a credibility contest and reversed where it was the testimony of one officer against the defendant. Here, the case is even closer. Daniel's credibility was even less than an unimpeached. Well, we don't know if the officers were impeached in those cases, but contrary to those cases, Daniel was an admitted drug user and drug addict. He used drugs daily for many years leading up to this. He said he used heroin on the day of the incident. Couldn't recall if he had used cocaine, but used $30 to $50 of cocaine weekly in addition to his $10 a day heroin habit. So his credibility was damaged, making this a closer case than in Naylor and closer than in Sanchez. Which is maybe why he got acquitted of attempted murder. Well. I mean, he did, didn't he? He was acquitted of attempted murder, and that. Of course, that's a specific intent crime. That's a specific intent crime. That would be a proper acquittal even without any credibility assessment. There was simply no evidence of intent. There was no evidence here. In fact, the State's evidence showed a lack of intent. I mean, theoretically, under the circumstances, if you have a man down on the ground and you have a hatchet and nobody stops you and you don't finish the job, so to speak, there is certainly ample room for a trier of fact to determine that there was no specific intent to kill. Certainly. And he didn't kill him. And there's evidence from the State's witness, Keith Palmer, that when Palmer said, you're going to kill the man, Slater stopped at that moment. And it's like that brought him out of, you know, made him realize the fight's over. He's not wanting to kill him. So even without a credibility determination, there was no evidence of attempt first-degree murder, no evidence of intent to kill. And even if you want to read any credibility determination. Well, I wouldn't go that far. I would say that the jury could reasonably find that there was no specific intent to kill. Certainly. If you set upon somebody with a hatchet and start chopping at him, let's put it this way, if he died, there would be no argument that there was something done with knowing that the axe would have reasonably been expected to cause the death of the individual. Well, there could be an inference of a strong probability of great bodily harm, not necessarily specific intent to kill, but it's possible. But in any case, it was reasonable to quit just based on the State's evidence alone. And even if you read any credibility determination into that, that just shows the jury was willing to balance credibility here. And had counsel's error not dragged Slater's credibility down toward the level of Daniel, there's a reasonable chance that the jury would have acquitted on the lesser charge as well. And counsel's error was clear, as in Sanchez. This was a contest to credibility in a closer case than in Sanchez and in Naylor. And if there are no further questions. I'm not saying there's not a credibility contest, but he's walking around, you know, we're talking conceal and carry in Illinois. He's walking around with a concealed hatchet and goes after a guy with a hatchet. And you're saying that this is close in terms of something other than the credibility? It seems like there's plenty of evidence here to sustain the conviction on attempted battery, I mean on the aggravated battery. Well, we're not challenging the sufficiency of the evidence, and we're not saying no reasonable person in light of the evidence could convict. We're saying that there's a reasonable probability of a different outcome had counsel performed his job adequately and prevented Slater's credibility from being damaged. And the characterization of him attacking people with a hatchet, again, is accepting Mr. Daniel's testimony, whereas Mr. Slater's testimony in self-defense, his affirmative defense of self-defense, was that he was responding in self-defense. So basically your argument is that he should have the same stellar credibility of anybody illegally selling cigarettes on the street corner while walking around with a hatchet. Perhaps that's one way to characterize it. He should have the credibility of someone who people do not know has a burglary conviction. And the hatchet, again, you brought up carrying guns, perhaps a hatchet is less dangerous than a gun, less likely to injure bystanders, less likely to directly kill. And you see that in this case Mr. Daniel survived the attack when Slater stopped the attack and rode away. So I think this was a credibility contest about how the fight started. That was the only issue here. And it's a closer credibility contest than Naylor and Sanchez, and Mr. Slater would ask for a new trial. Okay. You're saying that the defendant, the State says, well, it doesn't make any difference because the defendant brought up his felony conviction, but you're saying that the defendant wouldn't have brought up his own felony conviction himself if the court had not already allowed that felony conviction to come in, in error because everybody calculated the wrong time. Is that a correct statement? Absolutely, yes. And the Supreme Court has said, and people against Williams in the 1994 case cited in the reply brief, that that type of anticipatory disclosure. Everybody did the math wrong. Everybody did the math wrong. Yes. And if counsel had simply known the law, known the state of the law, and been able to tell the court that this is too old, that counsel never moved to exclude this on the basis that it was too old, and that error allowed this to come in, had counsel made the right motion, there would have been no discretion to allow this conviction to come in because there's no discretion under the Illinois rule in this regard to allow convictions that are beyond that 10-year time limit. So Slater would ask that this court reverse and remand for a new trial. Thank you. Thanks. Thank you. Well, Ms. Warnick, you have a tough one today. Let's start with the issue of the error. Conceded? No, absolutely not. You think that there is grounds for the trial judges allowing this in as impeachment? Justice Epstein, this is the way I believe that the analysis should go. The question in this case, which the defendant selected, is ineffective assistance of counsel. This is not error, and this is not plain error. They picked the prism, and the prism is the two prongs of Strickland. Right. I understand that. But the underlying basis, which we have to reach first, is whether the ruling by the court was an error, because if it wasn't an error, then it's very difficult, if not impossible, to prove that the failure to object to it really made any difference at all. So let's start with. But respectfully, this is not a question of error. The analysis should be here. Okay, they're arguing that the defense attorney had an obligation to presumably argue with the trial judge, right? Because the trial judge considered 10 years, and he made a learned ruling. He said, I think within the broadest definition of the term, confinement can include MSR. And do you think that was correct? I think it's a reasonable interpretation, and I think that's the question here. The question here is, is it such a black-and-white question that counsel was obligated to argue with the judge about it? Because if not, it's not ineffective. You keep jumping ahead respectfully to the next issue, which is we only get to it, I think, if the judge is ruling. I mean, Mr. Harris argues that if counsel had known the law and had properly argued it, the trial judge would have recognized the error and corrected it, and the impeachment wouldn't have occurred. Whether he's correct that the judge would have recognized the argument or not, we don't reach initially unless we agree with the position that the ruling by the trial court was, in fact, in error. And so my question to you is, are you seriously contesting that the definition of confinement, whether we say that the judge's admittedly broad reading was justified? If you think it's justified, tell me that you think that that is within the rubric of confinement. And maybe your credibility will be stretched by an affirmative answer to that, but I've known you too long and respect you too much to think that that's the situation. So can we move on past that issue? I just don't think it's appropriate in the confines of this case to concede it for this reason. If you look at the history of this issue, in People v. Yost, Montgomery adopted Rule 609, right? And in Montgomery, the court said that 10 years is judged from the conviction or the release from confinement. Following that case, Rule 609 changed, and some courts started adopting the proposed, the new proposed versions, not the one that was adopted in Montgomery. So in People v. Yost, the Supreme Court said no, and in Montgomery, we intended to adopt the version that we said in Montgomery. There was no discussion of what confinement means. Then came People v. Wormack, and in People v. Wormack, the issue was probation, and they said probation was not confinement. Then after Wormack came People v. Norwood, and in Norwood, the people actually conceded that parole wasn't a part of the confinement. My point is that there has really never been a really good discussion of what confinement means in terms of Montgomery. So the concession that you just recited that the state made, you're arguing has not ever been decided because the state made the concession? I'm arguing that the meaning of confinement has never really been analyzed in terms of that. When you're an MSR, you're imprisoned in the penitentiary. When you're an MSR, you're in the legal custody of the Illinois Department of Corrections. Do I think that it's reasonable to argue it? Yes, I do, and more importantly, do I think that the trial judge made a reasonable decision? Yes. They could have argued plain error, and if they argued plain error, we'd be up here talking about that, but they didn't, and they argued ineffective assistance of counsel, and because they did, our question must be, was the judge's ruling so illogical, so black and white, so out of the realm of possibility, that this attorney should have stood up and argued with him about it? I would submit not. So respectfully, it's not a matter of trying to avoid your question, Your Honor. It's a matter of how this case should be analyzed. So you're challenging both the first and the second part of it? Yes, absolutely. But I certainly think that this should be disposed of on the prejudice prong, because first of all, Judge Hill considered just the exact issues they're raising. He considered the timeliness. He considered the MSR issue, and he decided against the defendant. So on a prejudice prong, they can't possibly prove that the outcome of the proceeding would have been different because he considered the exact issues they're raising now, and he rejected them. And even if you go further than that and go to the trial, this defense attorney used the prior conviction, the same one that was admitted in rebuttal, as part of his defense strategy. Yes, but that came about as the case cited by Mr. Harris brought up. Any lawyer who was not ineffective totally would front the conviction once he knew the conviction was going to come in anyway. And the fact that he responded to what he thought, or should have maybe thought, was an erroneous ruling admitting it, admitting the evidence as impeachment, by fronting it and not letting it come out after the fact, really doesn't weigh in at all in my view. Well, Your Honor, I guess this is our day to disagree. Because in my humble opinion. I'm sure. In my humble opinion, you know, all of us who have been in the trial courts, when you front a conviction, you say, John Smith, what's your name? Whatever. Where do you live? Whatever. And, oh, by the way, you have a prior conviction, don't you? That's fronting the evidence. This wasn't fronted. This was part of the trial strategy. The strategy was to. But isn't the strategy determined on a dynamic basis as the determination of what is going to be admissible evidence is ruled upon by the trial court? I mean, you can't just, as a trial lawyer, expect, and we don't see trial lawyers who know what they're doing, say, well, this is my strategy, and regardless of what evidence comes in, it's going to remain my strategy throughout. If an adverse evidentiary ruling comes in, isn't it the responsibility of the trial lawyer to say, okay, well, since I know that's coming in, is there some way I can soften the blow and try to turn this as something that can support my theory of innocence? Isn't that what they do? That would be good trial lawyering. But in this case also, this conviction was used to sort of fortify the defense attorney's profile of the defendant. So what he tried to show is, as best you can be a legitimate cigarette salesperson without a license, that he was supporting his family, that he wasn't on state aid. They tried to show him to be somewhat of a reputable businessman, albeit without a license. And the defendant also stipulated to a 2008 conviction for selling cigarettes without a license. And as Your Honor noted, all of the parties in this case were either drug addicts or prior convictions. This prior conviction wasn't a big news to the jury, quite frankly. They took the parties as they were. The state sure wanted it in, though, didn't they? The prior conviction? Yeah. Well, obviously they admitted it. That's correct. Right. And they did that because they thought it could affect the credibility determination that the jury would have on the defendant. And in this case, jumping ahead to the prejudice fact, you really only have a one-on-one as to the act itself. The other eyewitnesses are seeing the act already having begun. And they don't pick it up until after the defendant is on top doing his acts, shall we say, with the acts. I would submit that there's no way this can be closely balanced. First of all, I'd really like to talk about Naylor for just a second. It seems to me that in every brief I read, the parties go, the defendant testified, therefore the evidence is closely balanced. That's not what Naylor is about. In his dissent, Justice Thomas talked about just that concern. And he said, I'm concerned that after this decision, every time a defendant testifies, there's going to be a closely balanced determination. And the court actually responded to Justice Thomas' dissent in their decision. And they said that dissent is unfounded, or that belief is unfounded. Every case must be judged on its own facts. And Naylor should not create an inference that just because the defendant testifies, the evidence is closely balanced. So what do we have here? We have a crippled victim who is 60 years old, who walks with a cane. We have his testimony that the defendant beat him with a hatchet. We have an eyewitness of Marcella Berry and Keith Palmer. Granted, they saw the act once it was happening. But this was repeated blows with a hatchet over the victim's head. We also have a concession by the defense, as part of their defense to the case, that he did use the hatchet. And they have a concession that he was a cigarette salesman without a license. And so really the issue in the case is what precipitated the attack or the confrontation between the two individuals. And on that issue, the fact of his, the victim, if you use your phrase, the victim's resultant injury doesn't shed light on that. The testimony of the two other eyewitnesses who only see the acts after they had begun doesn't shed light on how it occurred, how it began. And so not quarreling one bit with your interpretation of Naylor and not putting it in the rubric that just because the defendant testified that automatically there is a close case, you do still only in your case have two people, the purported victim and the defendant, confronting each other's story about how the attack or the physical confrontation began. And in that sense, there is nothing in the evidence that I can see that weighs one way or the other. And so the definition of closely balanced is not dependent in this case, in my view, on the fact that the defendant merely testified. Well, I don't think that the question on the initial what happened between self-defense and the victim's testimony, that it was just an out of the blue attack upon him. I think that there is a lot of other evidence in this case which supports the victim and goes against the defendant. For example, the victim and the defendant had an altercation on the street beforehand, but they both go home and the defendant comes back with a hatchet. Okay? That's the first thing. So he comes back armed with a hatchet. Secondly, the wounds on the victim. And look at their testimony. He wasn't swinging the hatchet at the chair leg. Exactly. And the blue light camera. He's over the victim. These are not actions of self-defense. And what does he say to Keith Palmer? He goes, you're next. Is that what you say after you've hit somebody or you've had, oh, my God, get this man some help? I had to do this in self-defense. He said, you're next. Then he goes home with his hatchet. The police find him with the blood on him. You have the blue light camera, so you have a motive. Is there any surprise that blood's on him after the incident? Again, what does that show? It shows that he fled. It shows that he threatened Keith Palmer. It shows that he came armed with a hatchet. He denies everything. He denies that the victim defended himself in any way when he was on the ground, yet clearly the victim has a defensive wound. And we're not here to make a credibility determination. The question is whether the jury was confronted with something to weigh on credibility that they should not have been confronted with because of the error of trial counsel. Well, let's talk about what he was convicted of. The conviction that got in wasn't that he was going after somebody with a lethal weapon, was it? No. They didn't hear about a conviction for attempted murder, right? No. No. It was burglary. And the question boils down to would the outcome of the proceedings would have been different? Would the outcome? That's the prejudice analysis. Is it the outcome? Because earlier you said the outcome was whether or not Judge Hill would have done his math differently. Yes. I think this case can be resolved on that. People v. Williams cited in the defendant's brief. That's exactly what they did. It's an entirely different factual situation. If you set that aside, give us your best argument on why the outcome would not have changed if the jury learned, did not learn that the guy who was wielding the hatchet had a burglary conviction. First of all, are you rejecting the interpretation of the second fraudulent curriculum that it merely needs to be sufficient to undermine the confidence in the outcome? No, that the outcome of the proceeding would have been. No, I'm not. I don't mean that the outcome of the proceeding would have been different. Right, sufficient to undermine the confidence. Yes, exactly. But again, in this case, given the players in this case, given all of their backgrounds, given the 2008 prior conviction, which the defendant put up front and the defendant has not contested on appeal, given the totality of the defendant's testimony and how he presented the evidence in this case, whether or not that jury, and by the way, it wasn't argued in closing argument. There was nothing about it that was particularly highlighted. Even if this court were to find, were to go to the error, which I would humbly suggest it's not the analysis, but even if you go there, the people would assert that there is absolutely no way the defendant can establish prejudice in this case. You're confident in the outcome? Yes. Yeah, okay. Fair enough. Thank you. The people would ask that the defendant's conviction be affirmed. Thank you. I don't think we should minimize the import of a burglar conviction. It's a forcible felony. It involves a threat or a risk of violence entering into someone's property with the intent to commit a crime inside. That's much more serious than the loose cigarette sales the jury would have heard about in the narrative of the case. Counsel said Mr. Slater went back and retrieved a hatchet, implying that it was for the purpose of a confrontation, but that's not the evidence. The testimony was that he carried the hatchet on his pocket even earlier during the day when there was a nonviolent, just an argument, on the street. So it's not, it doesn't show that he intended to instigate a violent conflict. Counsel also said that the case law wasn't clear enough for counsel to have misstatement about MSR, talking about Yost and Wormack and Norwood, but ignoring this court's decision in Sanchez, which was quite clear just in 2010 before this trial, saying that MSR doesn't count as confinement and calling the history of the law clear. She also discussed Yost and Wormack as dealing with probation, but what they did was reject the new language in the federal rule that added probation or parole to the federal rule in addition to confinement. So the Illinois law is just release from confinement. The new federal rule said release from confinement, probation or parole, and Yost and Wormack, two Supreme Court cases, said that Illinois doesn't follow that language. I just don't know. I don't know if I can overcome how we should not be confident in the outcome here when this guy goes back to the scene where he had a prior argument with somebody carrying a hatchet. And you want to say that just because this burglary conviction got in, the jury is completely misled as to whether or not this hatchet-wielding man was guilty of aggravated battery. That seems like a bit of a far leap for me. Well, it's a hatchet-carrying, not wielding, until he was attacked by Mr. Daniel. He, again, didn't go back to retrieve it after the first confrontation. The first confrontation wasn't violent at all. There were some words exchanged, but nobody was clear about what was said. And the law presumes these convictions are damaging to someone's credibility. That's the only evidentiary purpose. That's the only reason they come in, to damage someone's credibility. So we have to presume that jurors at least weighed that against Mr. Slater. Otherwise, there's no basis for this rule in Illinois law. And just touching on the strategic aspect that counsel mentioned of bringing this out, it's clear that this wasn't a strategy from the beginning because counsel never would have moved to exclude it on the basis that it was too prejudicial. And there was a jury instruction saying that this could only be used for impeachment. So there was no other value to this evidence other than to damage his client's credibility. So that error, in this case, like Sanchez and Naylor, requires a new trial. Okay. Thank you. Thank you. We will take it under advisement. Is everybody here for the 1030? Counsel? Thank you both for very well-presented arguments.